UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN W. O'CONNOR, SR,

                                 Plaintiff,

        v.                                    3:04-cv-0318

THE COLLEGE OF SAINT ROSE,

                                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff John W. O'Connor, Sr. commenced the instant action against Defendant, The College of Saint Rose ("Saint Rose"), alleging claims of discrimination on account of disability in violation of Title III of the Americans with Disability Act, 42 U.S.C., 42 U.S.C. § 12102 et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794(a).  Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.[1]

---

[1] The Court rejects Plaintiff's request to deny the motion on the grounds that it is untimely.  Court records indicate that the motion was timely and properly filed.

## I.        FACTS[2]

Plaintiff applied to Saint Rose to earn a Master's Degree in School Psychology. Plaintiff attended the graduate program at Saint Rose during the Fall 2002 and Spring 2003 semesters.

On January 15, 2003, Plaintiff met with Assistant Director for Special Services Kelly Hermann ("Hermann") to register as a student with disabilities.  During this process, Plaintiff completed, in part, a student data sheet.  Hermann completed the remainder of the date sheet.  Defendant contends that Plaintiff only informed it of disabilities relating to his neck, lower back, and wrist.  Defendant listed these disabilities on the student data sheet.  Plaintiff insists that he also told Hermann about hearing difficulties, asthma,[3] and his inability to sit on hard surfaces.  According to Defendant, Plaintiff requested extended time for testing and the use of a computer for essay exams as accommodations for his disabilities.  Plaintiff contends that he also requested rest breaks during class, non-rigid seating, and accommodations for his hearing loss.  After reviewing the completed student data sheet, Plaintiff expressed concern to Hermann regarding the seating in his classroom.  Hermann instructed Plaintiff to

---

[2] In his response to Defendant's statement of material facts, Plaintiff frequently notes that he is unable to attest to certain facts and, therefore, either denies the assertion or is unable to respond.  In most instances, Plaintiff could have ascertained the relevant facts through the discovery process.  Thus, his denials based on lack of information and without any citations to the record are improper.  Further, those portions of Defendant's statement of material facts that are not expressly responded to by Plaintiff are deemed admitted.  See N.D.N.Y.L.R. 7.1(a)(3).  Plaintiff should have been well aware of Local Rule 7.1(a)(3) because Defendant reprinted it in the beginning of its Rule 7.1(a)(3) statement that was served on Plaintiff.  Where, however, Plaintiff purports to provide first hand knowledge through his Rule 7.1(a)(3) statement, the Court has treated it as an affidavit.

[3] It is claimed that Hermann was aware that Plaintiff used an inhaler and had a prescription for it. According to Plaintiff, Hermann required additional medical documentation concerning his asthma before she would list it on the student data sheet.  By his own admission, Plaintiff did not follow up on the issue, purportedly because Plaintiff was advised that all school facilities were smoke-free.  See Pl.'s Stmnt. of Mat. Facts at ¶ 23

contact her if there were any problems with the seating.[4]  Plaintiff never complained to

Hermann regarding seating.[5]

During the Spring 2003 semester, Plaintiff was enrolled in a course entitled

Introductory Course to Special Education Services, SED 501 that was taught by Stevan

Abelson ("Abelson").  Hermann prepared a confidential memorandum to Abelson indicating

that Plaintiff required extended time for testing and the use of a computer for essay exams as

accommodations.[6]  During the Spring 2003 semester, Defendant provided Plaintiff with

extended testing time and allowed the use of a computer.[7]  Plaintiff states that he was not

provided with Dragon Speaking Naturally (software that Plaintiff claims would have assisted

him in taking notes), non-rigid seating, a classroom where Plaintiff could sit in non-rigid

seating and still be able to hear the instructor, or regular class breaks.  Plaintiff also asserts

that he was denied an extension of time on a graded class assignment (the poster

presentation).

Abelson's class was originally scheduled to be in a basement classroom.  After the

first class, Abelson obtained a room change (purportedly because the basement classroom

---

[4] Although Plaintiff denies this assertion, he fails to support the denial by a citation to evidence in the record.  Accordingly, the assertion is deemed admitted.

[5] See n.1 *supra*.  Moreover, at deposition, Plaintiff was unable to recall any information about having complained about seating.

[6] Plaintiff complains that he was never afforded the opportunity to review this memorandum and add any accommodations that Hermann failed to include (*i.e.* non-rigid seating, class breaks, and accommodation for his hearing loss).

[7] Plaintiff does not deny this factual assertion, but maintains that "[t]he poster presentation was the equivalent of a test" and that Abelson denied Plaintiff's request for an extension of time to complete the presentation.  There is no support in the record for the proposition that the poster presentation was the equivalent of the test or that Plaintiff requested additional time for the presentation on account of any disability.  There were no essay exams in the class and, therefore, there was no need to provide Plaintiff with a computer for essay exams.

did not suit his teaching style).  The classroom was changed to an amphitheater-style room on the third floor of the building.  Initially, no students complained about the change in rooms.  During the third or fourth class, Plaintiff complained about the seating in the new room.  Abelson responded that Plaintiff could get up and move around as needed.  Abelson further told Plaintiff that he could sit in a more standard chair anywhere in the room.[8]

Abelson did not have a formal class policy on taking breaks.  He apparently preferred not to take a break and, instead, to end the class early.  If, however, students wanted a break, he would allow it.  Plaintiff contends that when he stood up to stretch, he would be ridiculed by Abelson and that he stopped standing up in class to avoid such ridicule.[9]  Plaintiff also states that whenever he stood up, Abelson would grant a break.

One of the class exercised involving teaching students how to avoid "labeling" persons with disabilities (the "labeling exercise").  As part of the exercise, index cards were placed on four students' heads.  The four students were instructed to debate an issue and, while doing so, follow the direction on the other three student's index cards.  Each of the four students did not know what his or her card said.  The directions included "disagree with me," "criticize me," "praise me," and "agree with everything I say."  After the debate, other students would comment.  Plaintiff was one of the four students selected to participate in the debate.  Although Plaintiff requested to be excused from participation, Abelson denied Plaintiff's request.  Plaintiff believes that he was singled out and picked on during the exercise.

---

[8] Plaintiff contends that this was not feasible because using a more standard chair would not have allowed him the use of a writing surface unless he moved to locations in the room where he could not adequately hear Abelson's lecture.  As is discussed *infra,* Plaintiff admitted at deposition that he did not have any problems with the class because of his hearing.

[9] The purported ridicule consists of a comment by Abelson to the effect of "we're stopping here and taking a break because plaintiff wants a break."

Abelson also required his students to prepare a poster presentation.  This was a group project in which Plaintiff was paired with two other students Morgan Myatt and another individual.  When the other individual dropped the course, Plaintiff and Myatt were left to prepare the project on their own.  Abelson used a purple card during the presentations to signal that the presenters' time was ending and they needed to conclude their presentation.  On April 9, 2003, Plaintiff sent Abelson an e-mail indicating he felt he needed more time for his presentation and that he planned to keep talking "purple card or not."  Abelson responded that he would give Plaintiff's group sufficient time, but that Plaintiff's "diplomacy was seriously lacking."  Plaintiff apologized and indicated that he enjoyed the class.  Plaintiff was not penalized for the amount of time he took in making his presentation.

Abelson treated the last day of class as a celebration.  The celebration was to be held at the Washington Tavern in Albany, New York.  Some students raised concerns over smoke in the Washington Tavern.  Abelson offered two solutions: (1) change the location; or (2) inquire whether the Tavern would make the restaurant section smoke-free for the evening.  The Washington Tavern agreed to the latter option.  Although there was smoking in the bar area, there was no smoking in the restaurant area.  Plaintiff did not attend this last class.  According to Plaintiff, he did not attend because he could not be in a facility where there was smoking.  Plaintiff claims that his grade suffered because he did not attend this final class.  Abelson contends that he did not reduce Plaintiff's grade because of his absence.

Abelson's course also required a research paper on a specific disability.  The research paper was due on March 19, 2003.  Abelson indicated that this date was flexible, provided that students discussed the matter with him.  Abelson did accept late papers.

Abelson also allowed students to re-submit papers to improve their grade.  On March 29,

2003 (after the due date), Plaintiff sent Abelson an e-mail indicating that he was still working

on his paper and would submit it as soon as it was completed.  Some time thereafter, Plaintiff

submitted his paper via e-mail.  Abelson graded the paper and then allegedly mailed it back

to Plaintiff.  Plaintiff claims that he never received the paper and that Abelson returned

everyone else's paper in class.[10]  Abelson contends that he afforded Plaintiff the opportunity

to resubmit his paper, but that he did not do so.  Plaintiff denies that Abelson told him he

could resubmit the paper.  Plaintiff contends that, because, he did not receive his paper

back, he was denied the opportunity to make corrections and improve his grade.  Plaintiff

received a final grade of "B+" for the course.

On May 17, 2003, Plaintiff sent a letter to Vice President of the College, Dr. Lowe,

contending that Abelson discriminated against him on account of his disability.  Dean Crystal

Gips ("Gips") investigated the matter.  Gips filed a report concerning her findings.  Vice

President Lowe directed Plaintiff's grade grievance to Department Chair, Dr. Margaret

McLane ("McLane").  McLane set up a meeting between Plaintiff, Abelson, and herself.  The

meeting took place on June 2, 2003.

The meeting resulted in a resolution whereby Plaintiff would submit his paper to

McLane for review.  McLane would provide feedback using Abelson's guidelines.  If the

paper was unsatisfactory, Plaintiff would be afforded the opportunity to revise and resubmit it.

Abelson also agreed to provide Plaintiff with the criteria he used to grade the poster

---

[10] Plaintiff's version of events is contradicted by the deposition testimony of Myatt
who testified that she never received her paper back, despite her requests to Abelson.

presentation.  Finally, Abelson agreed to review Plaintiff's class participation points in light of the discussion of how Plaintiff's disability impacted his class participation.

Plaintiff e-mailed a copy of his paper to McLane.  McLane reviewed and graded the paper.  Due to changes in writing style throughout the paper, McLane suspected plagiarism. McLane submitted Plaintiff's paper to plagiaserve.com to locate any articles Plaintiff may have plagiarized.   Plagiaserve.com returned a reporting listing sections of Plaintiff's paper that were allegedly plagiarized.  McLane personally reviewed the articles that Plaintiff allegedly plagiarized.  McLane's review identified language in Plaintiff's paper that was identical to language in articles prepared by other authors, but did not contain appropriate citations.  McLane, therefore, assigned Plaintiff a grade of zero.  Defendant concluded that plagiarism was a serious form of academic dishonesty that precluded Plaintiff from resubmitting it for a higher grade.  In the meantime, Abelson informed McLane that he had raised Plaintiff's poster presentation and class participation grades to full credit.  However, in light of Plaintiff's performance on the paper, he received a failing grade in the course.  By letter dated June 25, 2003, McLane notified Plaintiff of his failing grade and the reasons therefor.

Plaintiff grieved his failing grade to the school's Grade Grievance Committee.  The Grade Grievance Committee recommended that a third party review Plaintiff's paper.  Vice President Christopher Arney determined that the Grade Grievance Committee did not have jurisdiction because Plaintiff's grievance already had been resolved by the agreement between McLane, Abelson and Plaintiff.  Arney also determined that the allegation of plagiarism triggered Plaintiff's rights under the policy on plagiarism and academic integrity.

Arney decided that, because Plaintiff had made allegations of discrimination against McLane and Abelson, neither of them should be involved in the grievance concerning the allegation of plagiarism.  Arney, therefore, identified three professors who would be available to review the matter and afforded Plaintiff the opportunity to choose which one of three professors he preferred.  Plaintiff selected Dr. Ismael Ramos ("Ramos").

After reviewing Plaintiff's paper, the published articles, and affording Plaintiff an opportunity to be heard, Ramos concluded that Plaintiff had engaged in plagiarism.  Ramos further concluded that, regardless of whether the plagiarism was intentional or accidental, a grade of "F" was warranted.  Based on Plaintiff's failing grade, he was dismissed from the college.

Plaintiff then commenced the instant action claiming that he was discriminated against.

## II.        STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  With this standard in mind, the Court will address Defendant's motion.

## III.      DISCUSSION

### a.      Monetary Damages

Plaintiff may not recover monetary damages on his claim under Title III of the Americans with Disabilities Act.  Such damages are not allowable as a matter of law.  See Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 86 (2d Cir. 2004); Steir v. Girls Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002).  Damages are recoverable under the Rehabilitation Act only upon a showing that Defendant acted with deliberate indifference to Plaintiff's rights under the Act.  Powell v. Nat'l Bd. of Medical Examiners, 364 F.3d 79, 89 (2d Cir. 2004); Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001); Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds by 527 U.S. 1031, 119 S. Ct. 2388, 144 L.Ed.2d 790 (1999); see also Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999); Bravin v. Mount Sinai Medical Center, 58 F. Supp.2d 269, 273 (S.D.N.Y. 1999).

In the instant case, assuming Plaintiff is a qualified individual with a disability, there is insufficient evidence upon which a fair-minded trier of fact could reasonably conclude that any violation of the Rehabilitation Act was the result of intentional discrimination or deliberate indifference to Plaintiff's rights.  Looking to Plaintiff's failure to accommodate claims, it is evident that Defendant made efforts to accommodate Plaintiff.  Defendant worked with Plaintiff to develop a plan to meet his claimed needs including allowing him extra testing time and a computer on which to complete any essay exams.  Although Plaintiff argues that Defendant failed to accommodate his asthma, it cannot be said that Defendant disregarded this condition.  Even if Defendant did not add asthma as a condition to Plaintiff's student data sheet, Defendant did accommodate, or attempt to accommodation, this condition when necessary.  When concerns were expressed concerning having the last class in an environment with smoking, Defendant undertook to ensure that the environment would be smoke free.  The undisputed evidence before the Court is that the Washington Tavern agreed to provide a smoke free environment in the restaurant portion of the Washington Tavern where the final class was held.  This is not evidence of intentional discrimination, but of reasonable efforts to accommodate.

Plaintiff also contends that Defendant failed to provide him with non-rigid seating.  Although non-rigid seating did not appear on the student data sheet or the memorandum to Abelson concerning Plaintiff's disabilities, the undisputed evidence is that Plaintiff was permitted to stand and move around as necessary during class and was also permitted to use other types of seating in the classroom.[11]  According to Plaintiff, when he complained to

---

[11] Plaintiff contends that Abelson's allowing him to use other seating was unreasonable because he could not place a non-rigid chair in a location where he would be able to hear Abelson.  This

(continued...)

Hermann about the seating, Hermann advised Plaintiff to contact the registrar.[12]  There is no evidence that Plaintiff did so.  In any event, Defendant's response does not amount to intentional discrimination or deliberate indifference, particularly in light of Abelson's response to Plaintiff.

Plaintiff also argues in his memorandum of law that Defendant did not accommodate his hearing disability.  This claim is not properly before the Court.  At deposition, Plaintiff testified that he is not claiming discrimination on account of his hearing.  In any event, Plaintiff has failed to demonstrate how he was denied any educational benefits or entitlements on account of the failure to accommodate any hearing loss.  Plaintiff's dispute is that he received low grades for class participation, on his poster presentation, and on his paper on account of his disability.  There is no evidence in the record that any of these grades are related to Plaintiff's hearing.  There also is no evidence of any failure to accommodate with respect to his hearing.  In fact, Plaintiff was specifically asked at deposition whether "hearing was an issue in Mr. Abelson's class."  Plaintiff responded "[n]ot that I know of."  Plaintiff was unable to answer whether he received any negative marks in Mr. Abelson's class on account of his hearing.  Moreover, Plaintiff admitted that Mr. Abelson spoke louder when asked to do so by Plaintiff.  There is insufficient evidence that any failure to accommodate Plaintiff's hearing interfered with his ability to participate in the class.

Plaintiff also contends that Defendant did not accommodate his need to take periodic breaks during class.  The undisputed testimony, however, is that Plaintiff was

---

[11](...continued)
contention is belied by Plaintiff's deposition testimony where, as is more fully discussed below, he testified that hearing was not an issue in Abelson's class.

[12] Hermann denies that Plaintiff ever complained about the seating in his classroom.

permitted to stand and stretch as needed during class to accommodate his claimed

disabilities and that Abelson did take a break when Plaintiff requested one.  Plaintiff

complains that he was singled out and ridiculed because Abelson allegedly remarked with

words to the effect of "we're stopping here and taking a break because plaintiff wants a

break."  This is not evidence of intentional discrimination or a deliberate disregard of

Plaintiff's rights.  To the contrary, it is evidence of Defendant's attempting to accommodate

Plaintiff's needs.

There also is a lack of evidence that Defendant otherwise discriminated against

Plaintiff.  Plaintiff alleges that he was singled out with respect to the labeling exercise.  The

undisputed evidence, however, is that three non-disabled students also were required to

participate in that exercise.  There is insufficient evidence suggesting that Plaintiff was

required to participate in that exercise because of any disability.

Plaintiff also claims that he was unfairly graded on, and Defendant failed to provide

him accommodations with respect to, his poster presentation.  It is difficult, if not impossible,

to ascertain what goes into a student's evaluation on a particular assignment.  Moreover, this

Court must avoid second guessing educational judgments.  Branum v. Clark, 927 F.2d 698,

705 (2d Cir. 1991).  In any event, Plaintiff offers insufficient evidence upon which it

reasonably can be concluded that he received a low grade because of his disability.  The

evidence before the Court is that Plaintiff received a poor grade because he was ill-prepared.

Further, Plaintiff fails to explain how or why his disabilities required additional time to give his

poster presentation.  Regardless, upon re-review by Abelson, Plaintiff received full credit on

his poster presentation.  The same holds for Plaintiff's complaint that he was discriminated

against with respect to his class participation grade.  There is insufficient evidence of

discrimination and, upon review, Abelson adjusted the class participation grade to full credit.

It, therefore, cannot be said that Plaintiff was deprived of anything with respect to those

grades.  Plaintiff has presented insufficient evidence of intentional discrimination or the

deliberate disregard of his rights.

Plaintiff also maintains that he was discriminated against with respect to his

research paper because he was not afforded the opportunity to re-submit it after Abelson

initially graded it.  There is nothing, however, suggesting that this occurred because of any

disabilities.  There is evidence that a non-disabled student, Myatt, also did not receive her

paper back and, thus, was not afforded an opportunity to re-submit the paper.  Moreover,

Plaintiff ultimately was allowed to submit another copy of his paper, which was re-reviewed

by Abelson and also reviewed by McLane and Ramos.

There also is insufficient evidence from which it reasonably can be concluded that

the review of Plaintiff's paper and/or grade was tainted by discriminatory animus.  Plaintiff

invoked the grade review process.  The result was a meeting between Plaintiff, McLane and

Abelson.  At the meeting, the parties agreed to a resolution whereby McLane would review

Plaintiff's paper and provide feedback.  If the paper was unsatisfactory, Plaintiff would be

permitted the opportunity to re-submit it.  Upon her review, however, McLane suspected

plagiarism.  The paper was, therefore, sent to plagiserve.com for a report.  The report from

plagiserve.com substantiated McLane's suspicion.  McLane, therefore, undertook a personal

comparison of Plaintiff's paper with the articles identified by plagiserve.com.  Plaintiff was

then afforded additional procedures to review this determination.  Specifically, Plaintiff was

allowed to choose one of three professors (none of whom had been implicated by Plaintiff as

having discriminated against him) to review Defendant's allegations and Plaintiff's defenses.

Upon review, it was determined that Plaintiff did engage in plagiarism and that, regardless of whether the plagiarism was intention or not, Plaintiff deserved a failing grade.[13]  Although Plaintiff was not permitted to re-submit his paper, it is not unreasonable for Defendant to have concluded that plagiarism was a serious instance of misconduct that was not subject to the resubmission process.  Further, there is nothing to suggest that the refusal to allow Plaintiff to resubmit his paper had to do with anything other than the plagiarism.  There simply is no evidence, direct or otherwise, suggesting that these actions were on account of any of Plaintiff's claimed disabilities.  In fact, Defendant has submitted evidence that it has failed and dismissed from the school other students who were found to have engaged in plagiarism.

For similar reasons, there is insufficient evidence that Defendant retaliated against Plaintiff for engaging in protected activity.  Assuming that Plaintiff engaged in protected activity, that Defendant was aware of such activity, and that Plaintiff sustained adverse actions, there is insufficient evidence of a causal connection between Plaintiff's protected activity and the adverse actions.  Assuming the adverse actions to be the lower grades on the poster presentation, in class participation, and on the research paper, there is nothing connecting those grades to any protected activity.  This is particularly so where, as a consequence of Plaintiff's grievances, Plaintiff's grade ultimately was raised for the poster

---

[13] The Court has compared Plaintiff's paper to the published articles.  There are several portions of Plaintiff's papers that are identical to the published articles without any credit to the original authors.  Other portions are substantially similar, with a few words changed here or there, with no credit to the original authors.  At deposition, Plaintiff admitted that he obtained portions of his paper from articles that he read and that it would not be appropriate to copy a published article word for word without giving appropriate credit.  Although Plaintiff contends he merely made a documentation error or mistake, there was ample evidence upon which Defendant could reasonably have concluded that Plaintiff engaged in plagiarism.

presentation and class participation.[14]  Assuming the adverse actions to be the failing grade

on the paper and the course, Defendant has offered a legitimate, non-retaliatory reason for

the failing grades - plagiarism.  For reasons previously discussed, Plaintiff has failed to

sustain his ultimate burden of demonstrating that Defendant's claim of plagiarism was a

pretext for unlawful discrimination.  In fact, Defendant's proffered reason appears to be true.

Plaintiff has not otherwise proffered sufficient evidence from which a fair-minded trier of fact

could reasonably conclude that Defendant failed Plaintiff in retaliation for his filing grievances

or claims of discrimination.[15]

        The Court is cognizant that instances of discrimination rarely are provable by direct

evidence.  Rather, such cases frequently must rely on circumstantial evidence.

Circumstantial evidence must, however, be distinguished from conjecture and conclusory

allegations.  Simply because something has happened to a person with disabilities does not,

standing alone, permit the conclusion that the person was treated differently because of

those disabilities (or any one of them).  There must be some evidence, direct or

circumstantial, tending to suggest that discrimination was a factor in Defendant's actions.

Although Plaintiff unquestionably suffered certain adverse actions during the Spring 2003

semester (*e.g.* failing the course and being dismissed from Saint Rose), there is simply

insufficient evidence from which a fair-minded trier of fact could reasonably conclude that

those things happened on account of his disability or disabilities.  To the contrary, the

---

[14] In this regard, Plaintiff did not suffer any adverse consequences.

[15] Although there is close timing between Plaintiff's grievances and his failing grade and dismissal from the College, the multiple layers of review afforded Plaintiff (initially by McLane, then by an outside company (plagiaserve.com), then additional review by McLane, and then a full hearing before Ramos) negates any potential inference of causation between the timing and the failing grade.

evidence suggests that Defendant attempted to accommodate Plaintiff's needs and that any failures to do so did not deprive Plaintiff of any educational benefits.  Similarly, although Plaintiff may have been dissatisfied with his grades, the grade review process, the finding that he engaged in plagiarism, and his dismissal from the College, there is insufficient evidence tending to suggest that his disabilities or retaliation played any part in these matters.  The simple fact of the matter is that Defendant had ample reason to believe that Plaintiff engaged in plagiarism.

For the foregoing reasons, Plaintiff's claims for monetary damages are dismissed.

### b.    Injunctive Relief

To the extent Plaintiff seeks injunctive relief (he did not request injunctive relief in his Amended Complaint), those claims, too, must be dismissed.  First, Defendant did not violate the ADA or Rehabilitation Act.  Second, assuming there have been violations, a claim for injunctive relief is moot because, according to his deposition testimony, Plaintiff enrolled in a Masters Degree program at Walden University.  Third, Plaintiff's failing grade and plagiarism would provide Defendant with a legitimate, non-discriminatory reason to refuse to allow Plaintiff to re-enroll at Saint Rose.

### c.    Other Claims

Finally, to the extent Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., they must be dismissed because Plaintiff was not employed by Defendant.  To the extent Plaintiff asserts claims for constitutional violations under 42 U.S.C. § 1983, those claims must be dismissed because there is no evidence that Defendant acted under color of state law.  To the extent Plaintiff asserts any state law claims, the Court declines to exercise supplemental jurisdiction over them.

**IV.      CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is

GRANTED and Plaintiff's Complaint is DISMISSED.  The Clerk of the Court shall close the

file in this matter.

IT IS SO ORDERED.

Dated:October 24,2005

Thomas J. McAvoy
Senior, U.S. District Judge